SALLY & FITCH LLP

OCT - 9 2015

**MARYLYN E. FLORES**
**Attorney at Law**
**P.O. Box 525**
**Lawrence, MA 01842**

October 5, 2015

Clerk Magistrate
Northeast Housing Court
2 Appleton Street
Lawrence, MA 01840

RECEIVED

OCT 0 5 2015

BY: ____

Re: Docket No.: **12-SP-536**

Dear Clerk Magistrate,

     Please find for filing, Defendant, Cioffi's Motion For Leave of Court to Implead BANA as a Third-Party Defendant along with his proposed Third Party Complaint against BANA. Please schedule this Motion to be heard in the Salem Housing Court, October 19, 2015 at 9:00 a.m.  26

     If you have any questions please feel free to contact me at (617) 981-9437 or Attorney David S. Flores at (617) 981-9453.

     Thank you for your attention to this matter.

Respectfully,

Marylyn E. Flores
Attorney at Law

Copy:  Ryan Cunningham, Esq.
       Jennifer E. Greaney, Esq.
       Allison Trawn, Esq.
       William Dorey, Esq.
       Client
       File

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

ESSEX, ss.                                    NORTHEAST HOUSING

Docket No.: 12-SP-536
Summary Process

Bank of New York Mellon,          )
    Plaintiff, Landlord           )
          v.                  )
                    )
Gerard J. Cioffi,                 )
    Defendant – Tenant            )

## DEFENDANT GERARD J. CIOFFI'S MOTION FOR LEAVE OF COURT TO IMPLEAD BANK OF AMERICA, N.A S/B/M TO BAC HOME LOANS SERVICING, LP AS THIRD PARTY DEFENDANT

NOW comes Defendant Gerard Cioffi, through his Counsel and hereby moves for leave of Court under Mass.R.Civ.P.14 to implead Bank of America, N.A. s/b/m to BAC Home Loans Servicing, LP ("Lender"), hereinafter referred to as ("BANA") as Third Party Defendant and file claims against BANA for:

    (1)  Breach of Contract;

    (2)  Unfair and Deceptive Trade Practices in Violation of M.G.L.c. 93A, §§ 2 & 11;

    (3)  Violation of the Massachusetts Fair Debt Collection Practices Act, Chapter 93A, §49;

    (4)  Unlawful Foreclosure in violation of M.G.L.c. 183, §21, M.G.L.c. 244, §14-17 & 35;

    (5)  Negligence;

    (6)  Trespass;

    (7)  Intentional Infliction of Emotional Distress;

In support of this Motion Defendant, Gerard Cioffi by and through his Counsel incorporates the following Memorandum and attaches the proposed Third-Party Complaint.

## MEMORANDUM

### I.     ISSUE

The issue before the Court is whether Defendant, Gerard Cioffi may implead BANA as a

third party Defendant in this post foreclosure case.

### II.    ARGUMENT

Rule 14 of the Massachusetts Rules of Civil Procedure allows a Defendant with leave of

Court, to implead a third party as a Defendant after commencement of the action and cause a

summons and complaint to be served upon a person who is or may be liable to him for all or part

of the plaintiff's claim against him.

In this case, BANA as s/b/m to BAC Home Loans Servicing, LP, did not hold a mortgage

on the Defendant, Gerard Cioffi's property located at 11 Francis Drive, Newburport, MA.

Plaintiff, Bank of New York Mellon purportedly paid Three Hundred Eighty-Eight Thousand

Dollars and 00/100 ($388,000.00) at an unlawful public foreclosure auction of the property, held

on September 9, 2011 by BAC Home Loans Servicing, LP ("Hereinafter referred to as "BAC

HLS") who was not the present holder of the mortgage to the property at that time of the

unlawful foreclosure sale.

On July 26, 2010 Mortgage Electronic Registration System, (hereinafter referred to as

"MERS") had previously made an unlawful robo signed assignment of the mortgage to BAC

HLS, in violation of Massachusetts Recording Statute, M.G.L.c. 183, §§ 1, 3, 4, & 6.  In

violation of the Massachusetts Consumer Protect Act, Chapter 93A and Massachusetts Law of

Foreclosure M.G.L.c. 183, § 21, BANA without the power of sale auctioned off the Defendant,

Gerard Cioffi's home also violating M.G.L.c. 244, §§ 13, 14, 15 & 35, and in violation of the

mortgage contract when it failed to provide adequate Notice of Foreclosure to the Defendant and

sold his house out from under him, causing him extreme emotional distress. BANA's violations render the foreclosure sale of the property, "void ab initio" and any conveyance of the property to Bank of New York, Mellon, "VOID."

Furthermore, On September 20, 2011 approximately 11 days after BANA held the unlawful auction without the power of sale as required under M.G.L.c. 183, §21, MERS then assigned the property to BANA and BANA recorded that after foreclosure (Ibanez) assignment on October 6, 2011 in the Southern Essex County Registry of Deeds.

No accounting of the foreclosure sale was ever provided to Defendant, Gerard Cioffi, within 60 days of the sale as required by M.G.L. 183 §27. However, a surplus check was written by Orlands Moran PLLC payable to Bank of America in the amount of $62,921.63 on November 29, 2012 a year after the invalid foreclosure. This check was supposed to be issued with an accounting of the sale to Defendant, Gerard Cioffi within 60 days of the September 9, 2011 foreclosure but it never was. This was unfair and deceptive and violated M.G.L. 183 §27 and M.G.L.c. 93A as well.

On January 30, 2012, Plaintiff, Bank of New York Mellon served, Defendant with a Summary Process Summons and Complaint. Defendant, Gerard Cioffi filed Affirmative Defenses to Title and filed a Motion to file Counterclaims against Bank of New York Mellon, for 93A Violations, Negligence and Intentional Infliction of Emotional Distress. The Defendant's Counterclaims were allowed.

The Plaintiff, filed an Interlocutory Appeal and the case was taken for Direct Appellate Review by the Massachusetts Supreme Judicial Court ("SJC"), which affirmed the Honorable Judge David Kerman's ruling while holding that the Housing Court had jurisdiction to hear counterclaims by post-foreclosure homeowners.

In March of 2013, while the case was pending oral arguments at the SJC, the Plaintiff, Bank of New York Mellon attempted to auction off the Defendant's home on line, causing the Defendant to seek assistance from the Court to stop the auction while the case was pending. This caused the Defendant great emotional distress and was a deceptive and unfair practice.

As BANA engaged in deceptive and unfair trade practices in violation of M.G.L.c. 93A and in violation of M.G.L.c. 183, §§1, 3, 4, 6 & 21 and M.G.L.c 244, §§13, 14, 15 & 35 by unlawfully foreclosing on the Defendant, Gerard Cioffi, causing damages to Defendant, Gerard Cioffi by breach of contract; trespass; severe physical and emotional distress, court costs, attorney fees and damage to Defendant, Cioffi's credit, in the interest of Justice, Defendant, Cioffi should be allowed to implead BANA as a third party Defendant under M.R.C.P. Rule 14.

### III.   CONCLUSION

WHEREFORE, BANA is liable to Defendant, Gerard Cioffi for damages, Defendant, Cioffi moves this Honorable Court to GRANT Defendant, Cioffi's Motion to Implead Bank of America, N.A. S/B/M to BAC Home Loans Servicing, LP as Third Party Defendant under M.R.C.P. Rule 14 and Grant any other such further relief this Honorable Court deems equitable and just.

Respectfully submitted,

Gerard J. Cioffi,

By his Attorneys,

Dated:  October 5, 2015

David S. Flores
Attorney at Law
BBO # 641558
PO Box 525

Marylyn Flores
Attorney at Law
BBO# 664595
PO Box 525

Lawrence, MA 01842                          Lawrence, MA  01842

## CERTIFICATE OF SERVICE

I, David S. Flores, hereby certify that a true copy of the above document was served via U.S. Mail on October 5, 2014, to Counsel for Plaintiff, Bank of New York Mellon, Jennifer E. Greaney, Sally & Fitch LLP, One Beacon Street, 16th Floor, Boston, MA 02108; William Dorry, Shapiro Dorry Masterson LLC, 145 Waterman Street, Providence, RI  02906; and Alyson Traw, Winston & Strawn LLP, 100 North Tryon Street, Charlotte, NC  28202; and local counsel for BANA Ryan Cunningham, Sally & Fitch LLP, One Beacon Street, 16th Floor, Boston, MA 02108.

David S. Flores
Attorney for Defendant

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

ESSEX, ss.                                    NORTHEAST HOUSING

Docket No.: 12-SP536
Summary Process

Bank of New York, Mellon,                )
   Plaintiff, Landlord                  )
           v.                        )
                                 )
Gerard J. Cioffi,                        )
   Defendant – Tenant and             )
   Third-Party Plaintiff              )
           v.                        )
                                 )
Bank of America, N.A. s/b/m to           )
BAC Home Loans Servicing, LP             )
   Third-Party Defendant              )

## DEFENDANT, GERARD CIOFFI'S THIRD-PARTY COMPLAINT AGAINST BANK OF AMERICA, N.A AND DEMAND FOR JURY TRIAL

NOW COMES Third-Party Plaintiff, Gerard Cioffi, hereinafter referred to as ("Cioffi"), and files this Complaint for (1) Breach of Contract (2) Unfair and Deceptive Trade Practices in Violation of M.G.L.c. 93A, §§ 2 & 11; (3) Violation of the Massachusetts Fair Debt Collection Practices Act, Chapter 93A, § 49; (4) Unlawful Foreclosure in Violation of M.G.L.c. 183, § 21, M.G.L.c. 244, §§ 14-17 & 35; (5) Negligence; (6) Trespass; and (7) Intentional Infliction of Emotional Distress, against Bank of America, N.A. s/b/m to BAC Home Loans Servicing, LP ("Lender"), hereinafter referred to as ("BANA") and in support states the following:

1) It is averred Plaintiff, Bank of New York, Mellon, does business in the State of Massachusetts with an office located in Boston, MA.

2) It is averred Defendant and Third-Party Plaintiff, Gerard Cioffi, is a resident of Massachusetts and resides at 11 Francis Drive, Newburyport, MA.

1

3) It is averred Third-Party Defendant, Bank of America, N.A. s/b/m to BAC Home Loans Servicing, LP ("Lender"), hereinafter referred to as ("BANA") does business in the State of Massachusetts with an office located in Boston, MA.

4) The Third-Party Plaintiff, Gerard Cioffi alleges he sustained injuries as a result of BANA's unfair and deceptive acts and unlawful foreclosure of his home located at 11 Francis Drive, Newburyport, MA and by Bank of New York Mellon's unfair and deceptive acts and wrongful eviction.

5) Third-Party Plaintiff, Gerard Cioffi was served with a Summary Process Summons and Complaint in 2012 to which he asserted Title Defenses and brought Counterclaims against Bank of New York Mellon.

## FACTS COMMON TO ALL CLAIMS

6. On March 14, 2003 Cioffi, took out a mortgage in the amount of Three Hundred Eighty-Eight Thousand Dollars ($388,000.00) with Countrywide Home Loans, Inc. secured with a mortgage on the property.

7. The mortgage was assigned to Mortgage Electronic Registration System, Inc. (hereinafter referred to as "MERS") on March 14, 2003.

8. The assignment of the mortgage was recorded in the Essex County Registry of Deeds at Book 20393, Page 326, but the promissory note which the mortgage secured was not assigned or recorded in the Essex County Registry of Deeds and MERS did not possess the promissory note that was secured by the mortgage.

9. In 2007 the Cioffi was diagnosed with Lymphoma and had to undergo chemotherapy treatment for a period of four months. Mr. Cioffi was very ill and was unable to continue working full-time, but still made all his mortgage payments on time through 2009.

10.   In 2010 Mr. Cioffi had become behind on many of his bills due to his illness and he had a difficult time making his mortgage payments on time.  Bank of America N.A. contacted Mr. Cioffi regarding the late payments and offered to consider Mr. Cioffi for a loan modification program and asked him to submit a number of documents to determine if he was eligible to modify his loan.

11.   On July 26, 2010 MERS improperly and fraudulently assigned the mortgage by use of an alleged "Robo-signer" or "Surrogate signer" on record at the Registry of Deeds, to BAC Home Loans Servicing, LP ("BAC HLS"), 400 Countrywide Way, Simi Valley, CA 93065, which formerly did business as Countrywide Home Loans Servicing, LP.

12.   The assignment of the mortgage was not recorded in the Essex County Registry of Deeds.

13.  On December 21, 2010 BAC HLS filed a Complaint to Foreclose the Mortgage with the Land Court, attesting that it was the assignee and holder of the mortgage when in fact it wasn't the holder of the mortgage, as it was never recorded in the Registry of Deeds and the Promissory note was never assigned in unity with the Mortgage that secured the original promissory note to Countrywide Home Loans.

14.   On December 29, 2010, based on misrepresentation to the Land Court by BAC HLS that it was the current mortgage holder on the property, Judgment was entered for BAC HLS to foreclose on the property.

15.   Despite the fact that BAC HLS had filed a Complaint to foreclose in the Land Court, it wrote a letter to Mr. Cioffi on March 19, 2011 informing him that he may be eligible for the Home Affordable Modification Program.  The letter stated that he needed to provide the documents to Bank of America by April 3, 2011.  Mr. Cioffi filled out the application and

provided the documents requested as well as the application to the address provided on the self-enclosed envelope that was enclosed with the letter.

16.    Over the next few months, Bank of America continued to request documents from Mr. Cioffi and continued to process his application for a loan modification under the Home Affordable Modification Program ("HAMP"), leaving Mr. Cioffi to believe they were not going to foreclose on him.

17.    Despite the fact Bank of America led Mr. Cioffi to believe they were in the process of determining whether he qualified for HAMP, in April of 2011, while processing his application for HAMP, BAC HLS advertised the foreclosure sale of the property in the Newburyport Daily News, to be held on May 6, 2011.

18.    The foreclosure sale of May 6, 2011 was postponed until June 7, 2011 and then postponed two more times on July 7, 2011 and August 9, 2011 as BAC HLS and Mr. Cioffi were in the process of determining whether he was eligible for the Home Affordable Modification Program.

19.    The property was never again re-advertised for a foreclosure sale in any Newspaper circulated in Mr. Cioffi's town or nearby town.

20.    Although BAC HLS advertised the foreclosure auctions three times in April of 2011, Bank of America continued to mislead Mr. Cioffi into believing that Bank of America was trying to process a loan modification for him and continued to request documents from him under the guises they were trying to help him and determine if he qualified for HAMP. On May 2, 2011 Mr. Cioffi sent all documents requested to Bank of America. When that wasn't good enough Bank of America requested more documents to which he sent those requested documents on May 4, 2011. On June 6, 2011 Mr. Cioffi once again sent notice to Bank of America that he

4

had provided all documents requested and would resend them if they needed them. Despite all

the documents were provided to Bank of America, they again requested more documents to

which he provided to Bank of America on June 10, 2011 and additional documents on June 13,

2011.

21.   On July 22, 2011 Bank of America, N.A. sent Mr. Cioffi a letter stating that his loan

was not eligible for the federal government's HAMP. In that letter it clearly stated in bold that

additional assistance was available to him through the HOPE program. Nothing in the letter

stated the bank was going to foreclose on him or stated he had a right of redemption. The letter

provided the number for the Hope program and he started the process of seeking help through the

HOPE program.

22.   On August 5, 2011 and August 8, 2011 Mr. Cioffi sent Bank of America more

documentation, as he was appealing the Banks decision that he was not eligible for the HAMP

program. Bank of America continued to accept the documents and communicate with him about

his appeal, but told him his property would be auctioned on August 9, 2011.

23.   On August 9, 2011 Bank of America did not hold the auction of Mr. Cioffi's

property and no re-publication of any auction was made nor was he given notice of any future

foreclosure sale or his right of redemption and the balance due to cure the default as required

under M.G.L.c. 244, §§ 13 & 14.

24.   On August 16, 2011 Bank of America sent Mr. Cioffi another letter stating that his

loan was not eligible for a loan modification through the HAMP program, but in bold it stated,

**"your loan may be eligible for a loan modification offered by Fannie Mae, which is a**

**program for loans that are not eligible for the Home Affordable Modification Program."**

The letter also stated that Bank of America would review Mr. Cioffi's current financial situation

to determine if they could help him modify his mortgage to give him an affordable mortgage payment. Again, nothing in the letter stated Bank of America, was going to foreclose on him or that he had a right of equitable redemption. The letter also stated in bold, **"P.S. It is critical that you send us the information we need to determine if you are eligible for the Fannie Mae Modification Program and a more affordable mortgage payment. Please return your documents no later than August 26, 2011."** Upon reading this letter he submitted all the documents requested by Bank of America.

25.    On August 26, 2011, nor any time thereafter, Mr. Cioffi still did not receive any certified letter or notice that the bank was going to foreclose and that he had a right to redemption or how much money was due to cure the default, as required under M.G.L.c. 244, §§ 13 & 14.

26.    On August 29, 2011 and on September 6, 2011 Mr. Cioffi was still communicating with Bank of America and providing more requested documents to Bank of America.

27.    On August 31, 2011 Mr. Cioffi received an e-mail from Bank of America stating, "After reviewing the documents, underwriting will require the following in order to proceed:" and Bank of America requested eight more extensive documents from Mr. Cioffi to be provided as soon as possible. Mr. Cioffi provided all requested documents to Bank of America.

28.    On September 7, 2011 Bank of America again e-mailed Mr. Cioffi and stated "Yes I received the documents, thank you. Underwriting reviewed the file, in order to proceed, the following are required:" and Bank of America requested more extensive documents that Mr. Cioffi had either already provided or would not possess until a future date. Bank of America stated in the e-mail "Please provide these to me today so we can proceed on the file." Mr. Cioffi responded immediately explaining that he had provided all documentation and that he would

have to wait for the new requested documents in order to send them to Bank of America. Bank of America told him that it had to have the documents that night in order to have any chance of requesting a postponement to the foreclosure sale date. At that time Bank of America still had not served him with any certified letter or notice that the bank was going to foreclose, on what date the foreclosure would be held and that he had a right to equitable redemption and how much money was due to cure the default, as required under M.G.L.c. 244, §§ 13 & 14.

29.   Mr. Cioffi immediately sent an e-mail to Bank of America stating that it was impossible to get the documents to them by September 8, 2011 and that they needed to postpone any foreclosure till he got the documents.

30.   On September 9, 2011 Mr. Cioffi e-mailed Bank of America asking what the next step was that needed to be done. A short time later that day, Bank of America called him and told him that his property had been sold the day before.

31.   On September 20, 2011 MERS assigned the mortgage to BANA, approximately 11 days after BANA foreclosed on Mr. Cioffi's property.

32.   BANA was not the holder of the mortgage when it foreclosed on Mr. Cioffi's property.

33.   No accounting of the sale of the property was ever provided to Mr. Cioffi within 60 days after the foreclosure sale as required under M.G.L.c. 183, § 27.

34.   No surplus of funds from the sale was ever paid to Mr. Cioffi.

35.   On January 11, 2012 Bank of New York Mellon served him with a 72 Hour Notice to Quit when it in fact did not own the property. Mr. Cioffi owned the property.

36.   On January 30, 2012 Bank of New York Mellon then served Mr. Cioffi with a Summary Process Eviction Summons and Complaint when it in fact did not own the property. Mr. Cioffi owned the property.

37.   On November 29, 2012 a year after the foreclosure of Mr. Cioffi's property, a surplus check from the foreclosure sale was issued by Orlands Moran PLLC payable to Bank of America in the amount of $62,921.63.

38.   Mr. Cioffi has loss of his home, damage to his credit, incurred attorney fees and court costs and has suffered severe physical and emotional distress from BANA's willful violations of the law and reckless disregard to his rights in property.

39.   BANA has violated the Massachusetts Consumer Protection Act.

40.   Pursuant to M.G.L.c. 185, § 67, all instruments that in any way are associated with a mortgage on registered land must themselves be registered, and the statute reads in relevant part:

> The owner of registered land may mortgage it by executing
> a mortgage deed.  Such deed may be assigned, extended,
> discharged, released in whole or in part, or otherwise dealt
> with by the mortgagee by any form of deed or instrument
> Sufficient in law for the purpose.  But such mortgage deed,
> and *all instruments which assign, extend, discharge and
> otherwise deal with the mortgage, shall be registered*, and
> shall take effect upon the title only from the time of
> registration.

M.G.L.c. 185, § 67.

41.   Where a mortgage grants the mortgage holder the power of sale, it includes by reference the power of sale set for at M.G.L.c. 183, § 21, as regulated by M.G.L. c. 244, §§ 11-17C, and 35A.

42.   Under M.G.L.c. 183, § 21, when a mortgagor defaults on the promissory note secured by a mortgage, the mortgage holder may sell the property at a public auction and convey the property to the purchaser in fee simple, but "one who sells under a power of sale must follow strictly its terms......[and i]f he fails to do so there is no valid execution of the power, and the sale is wholly void." Moore v. Dick, 187 Mass. 207, 211 (1905).

43.   Any effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure under the relevant statues is void. See Bevilacqua v. Rodriguez, 460 Mass. 762, 778 (2011); U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 647 (2011).

44.   Additionally, when a mortgagee seeks to foreclose on a mortgagor in Massachusetts under the statutory power of sale it must strictly comply with each aspect of the statutory scheme.  The statute requires:

a) Notice to the mortgagor of the right to cure a default before accelerating the entire unpaid balance of the mortgage or otherwise enforcing the mortgage, including by exercising the power of sale. M.G.L.c. 244, § 35A.  The Mortgagee must also provide at least 150 days' notice before accelerating the debt or otherwise enforcing the mortgage.

BAC HLS never provided any notice that it was foreclosing on the Defendant on September, 9, 2011 as it made misrepresentations to the Defendant that while loan modification negotiations were occurring, the foreclosure proceedings and the auction would be postponed.  As the negotiations progressed, however, the Defendant learned through communications with lower level employees of BAC HLS, (rather than through proper notice as required under the statutory scheme), that the foreclosure auction was continuing.  BAC HLS knew or should have known that this misrepresentation regarding foreclosure proceedings was deceptive and misleading and would harm Mr. Cioffi.  Once BAC HLS started to negotiate a loan modification it had a duty to act in good faith, but failed to do so.

b) File a complaint to foreclose the mortgage in the Land Court that seeks a judgment that the mortgagor is not entitled to the benefits of the Service members Civil Relief Act, a federal statute that restricts foreclosures if the mortgagor is a member of the military on active duty and in the Affidavit the filing party must attest either that it is the mortgagee or that it is authorized to act as the mortgagee. 50 U.S.C.A. § 35A.

When BAC HLS filed a Complaint to foreclose the mortgage in the Land Court It misrepresented to the Court that it was the current holder of the mortgage, when in fact it wasn't the current holder of the mortgage as it was improperly assigned By MERS to BAC HLS by a known Robo-Signor or Surrogate signor and not Recorded in the Registry of Deeds as required by law, making the assignment to BAC HLS void. Furthermore, approximately 11 days after the foreclosure sale on September 9, 2011, MERS assigned the mortgage to BANA as BANA did not hold the mortgage at the time of the foreclosure, therefore passing no title to Bank of New York, Mellon as in Ibanez. Southern Essex Registry of Deeds has provided an Affidavit to the Defendant attesting that the said property's title is corrupt due to the alleged Robo-Signor or Surrogate signor.

c) Give notice to the mortgagor at least fourteen days prior to the proposed date of sale stating, the redemption amount as of thirty days prior to the date of sale and identifying the present holder of the mortgage. M.G.L.c. 244, § 14.

BAC HLS did not give notice to Mr. Cioffi fourteen days before the sale on September 9, 2011 stating the proposed date of sale, the redemption amount as of Thirty days prior to the date of sale and failed to identify the present holder of the Promissory note, thereby rendering the foreclosure void and passing no title to Bank of New York, Mellon.

d) Advertise for three successive weeks in a newspaper with general circulation in the town where the property lies. M.G.L.c. 244, § 14.

Although BAC HLS did advertise in April, when they did advertise they did so falsely stating they were the current holder of the mortgage when in fact the mortgage was not assigned to BANA until September 20, 2011 with the foreclosure resulting in an Ibanez property. Additionally the sale was not held until September 9, 2011 they failed to republish the date of sale with the devastating result that Mr. Cioffi didn't even know his house had sold and was stripped of any possibility of exercising his right to redemption, therefore voiding the sale and passing no title to Bank of New York, Mellon.

e) Give notice to the mortgagor of the mortgagee's intent to collect a deficiency (if the mortgage intends to do so) at least twenty-one days prior to the date of the sale. M.G.L.c. 244, §17B. After the foreclosure sale the party providing the notice must sign and file an affidavit with the registry of deeds attesting to its compliance with this portion of the foreclosure statute. See Id.

BAC HLS provided a fraudulent document to the registry of deeds as it was attested that BAC HLS had complied with M.G.L.c. 244, §17B, when it had in fact failed to provide required notice under the statute.

f) Record an affidavit in the appropriate Registry of Deeds that "fully and particularly" state what action was taken in the course of conducting the

foreclosure sale and to which is attached copies of the notice of sale as published pursuant to M.G.L.c. 244, §§14 & 15. BAC HLS failed to provide notice for the September auction as required under the statute and falsely attested it was the holder of the mortgage when in fact the mortgage was not assigned to BANA until approximately 11 days after the foreclosure.

BAC HLS provided only one notice of the sale with the affidavit filed in the Registry of Deeds.

g) When the statutory requirements in foreclosures are not strictly followed the Bank violates those statutes and the Massachusetts Consumer Protection Act.

BAC HLS failed to strictly follow the statutory requirements in foreclosure therefore violating those statutes and the Massachusetts Consumer Protection Act.

## CLAIMS

### I.    Breach of Contract

45.    The above facts are restated in this Count and incorporated herein by reference.

46.    The acts of the Third Party Defendant, BANA in paragraphs 1-44 are in breach of the mortgage contract. In the mortgage contract with Country Wide it states that only the mortgage can foreclose. Although BANA bought out Country Wide, BANA was never assigned the mortgage and therefore had no power of sale and had no legal right to foreclose on Mr. Cioffi. The foreclosure was in breach of the contract.

The mortgage contract states that the mortgagee will also comply with all the laws of the Commonwealth and Federal Laws. Assuming BANA was the mortgagee at the time of the foreclosure of Mr. Cioffi's home, BANA did not comply with Massachusetts laws under M.G.L.c. 186A, §2; c. 186, §14; c. 244, §§14-17, 35A & 35B and c. 93A, which the Mortgage contract states that it must abide by the laws of the State. BANA did not comply with the notice requirements of M.G.L.c. 244, §§14-17 and 35 and M.G.L.c. 183, § 27 and did not provide an accounting of the foreclosure or pay the surplus from the purported auction to Mr. Cioffi. Mr. Cioffi lost the opportunity to obtain a loan and payoff the mortgage as BANA breached the

agreement by foreclosing without proper notice of the foreclosure to Mr. Cioffi in breach of the mortgage contract

47.     BANA's breach of the mortgage contract, caused Mr. Cioffi to suffer damages to include the loss of his home, damage to his credit, severe physical and emotional distress, attorney fees and court costs for which he should be compensated.

## II. Unfair and Deceptive Trade Practices in Violation of Consumer Protection Act M.G.L.c. 93A §§ 2 & 11

48.     The above facts are restated in this Count and incorporated herein by reference.

49.     The acts of the Plaintiff in paragraphs 1 and 44 are unfair and deceptive trade practices in violation of Chapter 93A of the Massachusetts Consumer Protection Act in that:

a)   The original lender retained the promissory note, but MERS assigned the Mortgage by a known Robo-Signer to BAC Home Loans Servicing, LP, a subsidiary of Bank of America. There was no Deed of assignment of the original Promissory note to BAC Home Loans Servicing and the mortgage assigned to BAC from MERS was not recorded in the Registry of Deeds, which violates the statute. As such, BAC Home Loans Servicing didn't have a secured interest in Mr. Cioffi's property and unlawfully foreclosed on his property and sold it to Bank of New York Mellon who by way of fraudulent document submitted to the Court, that it was the rightful owner of the property and thereby had the authority to evict the Defendant out of his home that is rightfully his.

b)   Furthermore, on September 20, 2011 approximately 11 days after the purported auction, BANA was assigned the property by MERS, thus creating an _Ibanez_ property. This second assignment was recorded in the Registry of Deeds more than a month after the purported auction. BANA's actions were unfair and deceptive in that it has represented to the State of Massachusetts Registry of Deeds that was the owner of Mr. Cioffi's property when they

foreclosed.  The assignment to BAC HLS was never recorded and was robo-signed in violation of the recording statute and has corrupted the chain of title.  As such, BANA's conduct in foreclosing on Mr. Cioffi when it well knew the chain of title was corrupt was unfair and deceptive and violates Chapter 93A of the Massachusetts Consumer Protection Act.

50)    The acts of BANA in not complying with the notice requirements of Massachusetts foreclosure law and selling Mr. Cioffi's house while in was being considered for a mortgage modification and without notifying him was unfair and deceptive.

51) The acts of BANA in not complying with the notice requirements of Massachusetts foreclosure law when it did not provide an accounting of the purported auction within 60 days as required under M.G.L.c. 183, § 27 and did not pay the surplus from the auction to Mr. Cioffi bot paid it to BANA was unfair and deceptive.

52.    The acts of BANA in paragraphs 1 through 44 are unfair and Deceptive Trade practices in violation of Chapter 93A of the Massachusetts Consumer Protection Act as far as:

a)  BANA, who held itself out as the mortgagee and servicer of the mortgage willfully chose not to consider Mr.Cioffi for a HAMP modification or to make a good faith effort to negotiate a commercially reasonable alternative to foreclosure of Mr. Cioffi's home, before accelerating maturity of the balance, in violation of statutory law M.G.L.c. 244, §§ 35A & B, which is a per se 93A violation as BANA engages in trade and commerce and willfully violated the statute.  BANA did not make a good faith effort to allow Mr. Cioffi to apply for a modification.  This was unfair and deceptive conduct by BANA.

b)  BANA's Fraudulent assignments of Mr. Cioffi's mortgage, using an known Robo

Signer and then recording the fraudulent assignment thereby corrupting the chain of title in the

Essex County Registry of Deeds Southern District in an attempt to fraudulently use this

recordation as notice to the world that Third-Party Defendant, BANA had superior title Mr.

Cioffi's property, when it sold his property on approximately September 9, 2011 was unfair and

deceptive in violation of M.G.L.c. 93A.

c)    There was no Deed of assignment of the original Promissory note to BANA as the

mortgagee, when it held itself out to be the owner of the mortgage and the note when it

foreclosed on the Plaintiff on September 9, 2011 without legal title to the property as the chain of

title to the property was corrupt before the foreclosure and there is no assignment of the

mortgage to BANA until September 20, 2011 approximately 11 days after the purported

foreclosure.

d)    All BANA's actions are unfair and deceptive in that it has falsely represented that

it was acting within its legal right to foreclose on Mr. Cioffi's home.

e)    Third-Party Defendant, BANA is in the mortgage business and knew that when it

purchased a mortgage it had to be properly assigned.  BANA also knew that if the mortgage was

not properly assigned it would not be the mortgagee and would not have the power of sale to

foreclose on the mortgage yet it did so and attempted to cure the invalid foreclosure by having

the property assigned to it after the foreclosure.  BANA held no legal title to the property and

trespassed on Mr. Cioffi's property and sold it out from under him while he was attempting to

get a mortgage modification, which is clearly an unfair and deceptive trade practice in violation

of Chapter 93A.

f)    BANA held no mortgage on the property and was not owed any money, as it was

never legally assigned the mortgage when it sent Mr. Cioffi bills and documents stating he owed Hundreds of Thousands of dollars, and threatened to foreclose on him and published in the newspaper that he had not paid, money he purportedly owed it. This is clearly an unfair and deceptive trade practice in violation of 93A.

g)  As BANA has engaged in egregious unfair and deceptive trade practices in violation of the Massachusetts Consumer Protection Act, Chapter 93, that has caused Mr. Cioffi damages by the loss of his home, damage to his credit, severe physical and emotional distress as he had heart problems from the stress, embarrassment, humiliation, frustration, anger, anxiety, fear, and depression and has incurred legal fees and court costs, Mr. Cioffi should be compensated by BANA for such.

### III.    Violation of the Massachusetts Fair Debt Collection Practices Act, Chapter 93A, § 49

53)    The above facts are restated in this Count and incorporated herein by reference.

54)    The acts of Third-Party Defendant, BANA in paragraphs 1-44 violated the Massachusetts Fair Debt Collection Practices Act, Chapter 93, § 49 in that BANA, debt collectors by its own words, has communicated to Mr. Cioff, that BANA, was assigned his mortgage and foreclosed on the mortgage when BANA, a debt collector did not hold the mortgage nor the Promissory Note as the mortgage was in a trust and owned by the investors of the trust.

55)    The acts of BANA in foreclosing on Mr. Cioffi's home is unfair, deceptive and unreasonable as BANA is a debt collector and held no title to his home. A debt collector does not take this kind of action in the usual course of business. Furthermore, BANA advertising Mr. Cioffi's home for sale while Mr. Cioffi was being considered for a loan modification is an unfair

method of attempting to collect a debt and gain possession of Mr. Cioffi's property as it was done so without holding the mortgage to the property.

56)     As BANA engaged in egregious unfair and deceptive trade practices and debt collection practices in violation of the Massachusetts Fair Debt Collection Practice Act, Chapter 93, §49 that has caused Mr. Cioffi the loss of his home, damage to his credit, severe physical and emotional distress, embarrassment, humiliation, frustration, anger, anxiety, fear, depression, loss of wages and legal fees, Mr. Cioffi should be fairly compensated by BANA, triple damages should be imposed and Mr. Cioffi should be awarded attorney fees and costs.

## IV. Unlawful Foreclosure in Violation of M.G.L.c. 183, § 21, M.G.L.c. 244, § 14-17 & 35

57)     The above facts are restated in this Count and incorporated herein by reference.

58)     The acts of BANA as stated in paragraphs 1-44 violated Massachusetts foreclosure law in that BANA did not have the power of sale to foreclose on Mr. Cioffi on approximately September 9, 2011, because the mortgage was not assigned to BANA until after the foreclosure on September 20, 2011. This violated M.G.L.c. 183, § 21 and the foreclosure is thus VOID.

59)     The acts of BANA as stated in paragraphs 1-44 violated Massachusetts foreclosure law in that it foreclosed on Mr. Cioffi while he was being considered for a mortgage modification and did so close without notice of the right to cure and without notice of the foreclosure sale. This violated M.G.L.c. 244, § 14-17 & 35 and the foreclosure is thus VOID.

## V.     Negligence

60.   The above facts are restated in this Count and incorporated herein by reference.

61)   The acts of BANA in paragraphs 1 and 44 were negligent. BANA had a duty to make sure the mortgage was properly assigned to it in order to ensure it had the power of sale

under M.G.L.c. 186, § 21 before it foreclosed upon Mr. Cioffi's property. BANA knew the

chain of title was corrupt but was negligent in failing to cure any clouds on the title before it

attempted to foreclose on the mortgage. BANA is in the business of buying and selling property

and knew or reasonably should have known the title was corrupt and in turn had no power of sale

to foreclose on Mr. Cioffi.

62)     Mr. Cioffi has sustained damages caused by BANA in that he has lost his home,

his credit has been damaged, he has severe emotional and physical distress as a result of

BANA's negligence and should be compensated for such. The Court should also impose

punitive damages as BANA's negligent conduct was outrageous and displayed a reckless

indifference to the rights of Mr. Cioffi. The Court should also award Mr. Cioffi costs and

reasonable attorney fees and any other relief this Honorable Court deems equitable and just.

## VI. Trespass

63)     Third-Party Defendant, BANA's conduct as described in paragraphs 1-44 was

without legal authority. BANA had no legal authority to foreclose upon Mr. Cioffi's property as

it did not hold the mortgage on the property at the time of the foreclosure. BANA was not

assigned the mortgage until September 20, 2011 approximately 11 days after the foreclosure sale

of September 9, 2011. BANA trespassed on Mr. Cioffi's property. BANA stood on Mr. Cioffi's

property on and took bids on the property when it did not own it. BANA did not have

permission to enter the property of Mr. Cioffi to take bids on his property. This was a trespass

on Plaintiff's property.

64)     Mr. Cioffi has sustained damages caused by BANA in that he has lost his home,

his credit has been damaged, he has severe emotional and physical distress as a result of

BANA's negligence and should be compensated for such. The Court should also impose

punitive damages as BANA's negligent conduct was outrageous and displayed a reckless indifference to the rights of Mr. Cioffi. The Court should also award Mr. Cioffi costs and reasonable attorney fees and any other relief this Honorable Court deems equitable and just.

## VII. Intentional Infliction of Emotional Distress

65) The above facts are restated in this Count and incorporated herein by reference.

66. Third-Party Defendant, BANA's conduct as was described in paragraphs 1 through 44 was outrageous and displayed a reckless indifference to the rights of Mr. Cioff in that he was unlawfully foreclosed upon by BANA who had no possessory interest, yet sold his home to another entity. This conduct is outrageous as it has purposely unlawfully foreclosed upon Mr. Cioffi when it did not have the power of sale and while Mr. Cioffi was being considered for a loan modification.

67. BANA's conduct is also outrageous as it tried to conceal the unlawful foreclosure when it attempted to cover up the unlawful sale by filing another assignment in the Registry of Deeds in hopes that nobody would notice it did not have the power of sale at the time of the foreclosure, as the foreclosure Deed was filed a month later. BANA's conduct was outrageous and has caused the Defendant severe physical and emotional distress as he had heart problems from the stress, embarrassment, humiliation, frustration, anger, anxiety, fear, and depression from the loss of his home and the damage to his credit as well as from the legal fees and court costs he has incurred to which Mr. Cioffi should be compensated by BANA for such, punitive damages should be imposed, costs and attorney fees should be awarded and any other such relief this Honorable Court deems equitable and just.

WHEREFORE, Third-Party Defendant, BANA has violated Mr. Cioffi's rights as in Counts I through VII, Third-Party Plaintiff, Gerard Cioffi request this honorable Court to (1)

18

award Mr. Cioffi damages for severe physical and emotional distress; (2) award Mr. Cioffi

punitive damages; (3) award court costs and reasonable attorney fees (4) enjoin BANA from

submitting to any Court or Registry of Deeds located within the Commonwealth any affidavit,

declaration, or attestation that purport to create, assign, transfer, modify, or discharge a mortgage

secured by the property; (5) Rescind and hold that Mr. Cioffi is the mortgagor in equity and grant

any other such relief this Honorable Court deems equitable and just.

**Third-Party Plaintiff, Gerard Cioffi DEMANDS A JURY TRIAL.**

Respectfully Submitted,

Gerard J. Cioffi
Third-Party Plaintiff

By His Attorneys

Dated:  October 5, 2015

David S. Flores
Attorney at Law
BBO # 641558
PO Box 525
Lawrence, MA 01842

Marylyn Flores
Attorney at Law
BBO# 664595
PO Box 525
Lawrence, MA  01842

Jennifer Ellen Greaney, Esq.
Sally & Fitch LLP
One Beacon Street
16th Floor
Boston, MA 02108

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                    HOUSING COURT DEPT.
                                              NORTHEAST DIVISION
                                              DOCKET NUMBER 12-SP-536

THE BANK OF NEW YORK MELLON F/K/A          )
THE BANK OF NEW YORK, AS SUCCESSOR         )
TRUSTEE TO JPMORGAN CHASE BANK, N.A.,      )
AS TRUSTEE FOR THE                         )
CERTIFICATEHOLDERS OF CWABS MASTER         )
TRUST, REVOLVING HOME EQUITY LOAN          )
ASSET BACKED NOTE, 2004-C,                 )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )
                                           )
GERARD CIOFFI,                             )
                                           )
        Defendant.

**PLAINTIFF THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS MASTER TRUST, REVOLVING HOME EQUITY LOAN ASSET BACKED NOTE, 2004-C's
MOTION FOR PROTECTIVE ORDER**

This case involves a mortgage dispute between The Bank of New York Mellon f/k/a The Bank of New York as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of CWABS Master Trust, Revolving Home Equity Loan Asset Backed Notes, Series 2004-C, its successors and/or assigns ("BNYM") and Gerard Cioffi ("Cioffi"). BNYM filed this summary process action and Cioffi responded with counterclaims alleging that BNYM lacks standing. Cioffi previously served BNYM with discovery requests in April 2014, to which BNYM responded in May 2014. On or about October 9, 2015, Cioffi served a Second Request for Documents (the "Second

CHL:94915.1

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                    HOUSING COURT DEPARTMENT
                                              NORTHEAST DIVISION
                                              DOCKET NUMBER 12-SP-536

THE BANK OF NEW YORK MELLON                        )
FKA THE BANK OF NEW YORK AS SUCCESSOR              )
TRUSTEE TO JPMORGAN CHASE BANK, N.A.,              )
AS TRUSTEE FOR THE CERTIFICATEHOLDERS              )
OF CW ABS MASTER TRUST, REVOLVING HOME             )
EQUITY LOAN ASSET BACKED NOTES,                    )
  SERIES 2004-C,                                   )
                            Plaintiff              )
                                                   )
GERARD CIOFFI,                                     )
                            Defendant              )

## MOTION TO DISMISS

NOW COMES, the Plaintiff, The Bank of New York Mellon f/k/a The Bank of New

York as successor trustee to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of

CWABS Master Trust, Revolving Home Equity Loan Asset Backed Notes, Series 2004-C, and

moves this honorable Court to allow the Plaintiff to dismiss its Summary Process Complaint

filed in the above-captioned matter on or about January, 2012, without prejudice. The Plaintiff

wishes to discontinue pursuing the present case at this time.[1] The Plaintiff contacted the

---

[1] As the underlying eviction is no longer viable, the Court may lack jurisdiction to continue to hear Defendant's counterclaims. The Massachusetts Supreme Court has held that the jurisdiction of housing courts to hear counterclaims filed in response to actions for possession "is broad enough to include the power to consider equitable defenses ... **as a supplement** to the jurisdiction of the Housing Court in all summary process actions in which a plaintiff seeks to evict someone from a place of habitation." *Bank of Am., N.A. v Rosa*, 466 Mass. 613, 623 (2013) (emphasis added). Thus, this Court's jurisdiction over counterclaims in summary process actions is ancillary and supplemental to its jurisdiction over issues of possession. Because there will no longer be an action for possession pending before this Court, there may be no legal basis upon which this Court may exercise jurisdiction over the counterclaims.

# COMMONWEALTH OF MASSACHUSETTS
## TRIAL COURT

ESSEX, ss.                                    NORTHEAST HOUSING

**Docket No.: 12-SP-536**
**Summary Process**

Bank of New York Mellon,           )
    Plaintiff, Landlord           )
           v.           )
                      )
Gerard J. Cioffi,                  )
    Defendant – Tenant            )

RECEIVED
OCT 0 5 2011
BY: 6d

## DEFENDANT GERARD J. CIOFFI'S MOTION FOR LEAVE OF COURT TO IMPLEAD BANK OF AMERICA, N.A S/B/M TO BAC HOME LOANS SERVICING, LP AS THIRD PARTY DEFENDANT

NOW comes Defendant Gerard Cioffi, through his Counsel and hereby moves for leave of Court under Mass.R.Civ.P.14 to implead Bank of America, N.A. s/b/m to BAC Home Loans Servicing, LP ("Lender"), hereinafter referred to as ("BANA") as Third Party Defendant and file claims against BANA for:

(1)  Breach of Contract;

(2) Unfair and Deceptive Trade Practices in Violation of M.G.L.c. 93A, §§ 2 & 11;

(3) Violation of the Massachusetts Fair Debt Collection Practices Act, Chapter 93A, §49;

(4) Unlawful Foreclosure in violation of M.G.L.c. 183, §21, M.G.L.c. 244, §14-17 & 35;

(5) Negligence;

(6) Trespass;

(7) Intentional Infliction of Emotional Distress;

In support of this Motion Defendant, Gerard Cioffi by and through his Counsel incorporates the following Memorandum and attaches the proposed Third-Party Complaint.